IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DARRELL LATTISAW | * |
| | *    CIVIL ACTION NO. CCB-15-2040 |
| V. | |
| | * |
| EASTERN CORRECTIONAL INSTITUTION, | |
| WEXFORD HEALTH SOURCES, INC., | * |
| RUTH PINKNEY, & | |
| NANCY BEALER[1] | * |

******

**MEMORANDUM**

Pending is a motion to dismiss, or in the alternative, motion for summary judgment filed on behalf of defendants Wexford Health Sources, Inc. ("Wexford"), Ruth Pinkney, P.A., and Nancy Bealer, R.N. ECF 14. Also pending is a motion to dismiss, or in the alternative, motion for summary judgment filed on behalf of defendant Eastern Correctional Institution ("ECI"). ECF 16. Plaintiff Darrell Lattisaw has responded. ECF 18. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the dispositive motions, construed as motions for summary judgment, will be granted.

Background

    A.    Lattisaw's claims

On July 13, 2015, Lattisaw, who is incarcerated at ECI, filed a self-represented civil rights complaint against ECI, Wexford, Pinkney, and Bealer, alleging that Pinkney tricked him into a blood test based upon the promise that if he took the blood test, the doctor would allow him to go to a hospital to see a "foot doctor." ECF No. 1, 3. Lattisaw alleges that despite submitting to the

---

[1] The Clerk shall amend the docket to reflect the correct names of the defendants.

1

blood test, he has not been treated at a hospital. *Id*. He states that his feet are crippled and that Pinkney "see[s] the pain and suffering." *Id*.

  B.  Defendants' Claims

The defendants indicate that the plaintiff suffers from diabetes for which he is regularly seen in the chronic care clinic by physicians, physician assistants, and nurse practitioners. ECF 14-5, ¶5. Lattisaw's plan of care regarding his diabetes includes a diabetic diet, insulin, and daily finger-sticks to check his blood-glucose to determine whether additional insulin is required to manage his condition. *Id*.

The plaintiff is noncompliant with his plan of treatment. *Id*. Since July 1, 2012, he has refused finger-stick tests and/or insulin on at least 274 occasions. *Id*. He also refused to have his blood drawn for testing on at least 18 occasions and has refused a diabetic diet. *Id*. Medical staff have routinely advised him regarding the risks inherent in his refusal to comply with the recommended course of treatment. *Id*. Lattisaw has repeatedly and regularly been educated as to how diabetes can affect his health, including the health of his feet. *Id*. Due to his diabetes, he is at risk for neuropathy and poor circulation. *Id*. Diabetes also places him at a greater risk for complications related to common foot problems, such as callouses, blisters, and dry or cracked heels. *Id*. These conditions can lead to painful non-healing wounds, which can then lead to infection. *Id*. He has been instructed that control of his diabetes is necessary to maintain the health of his feet and has been advised to seek medical evaluation for his foot complaints. *Id*.

The plaintiff was evaluated by Pinkney on December 29, 2014, during a chronic care visit. ECF 14-4, 1-2; ECF 14-5, ¶ 6. At that time, Lattisaw reported taking his prescribed Metformin but refusing to take his prescribed Levemir because he believed his blood sugars were too low when taking Levemir. ECF 14-4, 1; ECF 14-5, ¶ 6. Pinkney noted that the plaintiff "has been

refusing insulin, getting bloodwork done and uses his Metformin when he 'feels his blood sugars are high.'" ECF 14-4, 1; ECF 14-5 ¶ 6. Pinkney educated him on the importance of bloodwork. *Id*. She examined his feet and noted the skin on both heels was cracked. ECF 14-4, 2; ECF 14-5 ¶ 6. No edema was observed. *Id*. Lattisaw agreed to urinalysis but refused to have his blood drawn. *Id*. Urinalysis showed high glucose levels. ECF 14-5 ¶ 6. There is no notation in the record that he was told he would be referred to a foot doctor or sent to a hospital. ECF 14-4, 1-2; ECF 14-5 ¶ 6.

The following week, the plaintiff was evaluated by Charlotte Townley, R.N. regarding his diabetes and was again educated about the need for compliance with his treatment plan and monitoring for his diabetes. ECF 14-4, 3; ECF 14-5, ¶ 7. Lattisaw said he did not care, that his conduct was how he managed his diabetes "on the streets." *Id*.

He was seen by Oriaku Ijoma, R.N.P. on March 23, 2015, for a chronic care visit regarding his diabetes. ECF 14-4, 4-5; ECF 14-5, ¶ 8. It was noted that he was noncompliant with his medication and diet. ECF 14-4, 4. He consented to have his blood drawn that day. ECF 14-4, 4; ECF 14-5, ¶ 8. Ijoma also noted that Lattisaw had lost 19 pounds since 2013, and the plaintiff reported dry, cracked skin on his left heel. *Id*. The heel appeared ashy and cracked, and he was provided moisturizing lotion. *Id*.

Lattisaw was evaluated the following week by Ben Oteyza, M.D. ECF 14-4, 6-7; ECF 14-5, ¶ 9. It was again noted that he had refused treatment for his diabetes in the past but appeared more amenable to treatment. ECF 14-4, 6; ECF 14-5, ¶ 9. His extremities appeared normal, and he was provided moisturizing lotion and Vitamin A and D ointment. ECF 14-4, 7; ECF 14-5, ¶ 9.

Ellen Moyer, R.N. examined the plaintiff on April 4, 2015, due to his complaint of calluses on his feet. ECF 14-4, 8-9; ECF 14-5, ¶ 10. Lattisaw reported he was to receive foot

soaks per Dr. Oteyza's order, but Moyer noted no such order in his chart. ECF 14-4, 8; ECF 14-5, ¶ 10. She directed him to continue using the ointment on his feet as necessary. ECF 14-4, 9; ECF 14-5, ¶ 10.

Lattisaw was seen by Pinkney on April 16, 2015, for a scheduled visit related to his feet. ECF 14-4, 10-11; ECF 14-5, ¶ 11. The plaintiff reported that he tried to shave the callus off his right foot. ECF 14-4, 10; ECF 14-5, ¶ 11. Pinkney also observed a callus on the plaintiff's left foot. *Id*. Lattisaw stated that he had been using boots after throwing out his sneakers. *Id*. He was diagnosed with an abrasion and a foot/toe infection. *Id*. Lattisaw was provided Ibuprofen and Bactrim. *Id*. He was advised to change his shoes to reduce pressure on his right toe. ECF 14-4, 11; ECF 14-5, ¶ 11. Pinkney also ordered x-rays of the plaintiff's right foot. *Id*. Lattisaw declined to have his feet shaved during the visit. *Id*. The record did not reflect that he was told he would be referred to a foot doctor or sent to a hospital. *Id*. X-rays of his right foot showed no acute fracture, dislocation or subluxation. ECF 16-4, 3.

On June 10, 2015, Pinkney saw Lattisaw again. ECF 14-4, 12-14; ECF 14-5, ¶ 12. It was noted that his diabetes was better controlled and he had been taking his insulin more consistently. ECF 14-4, 12; ECF 14-5, ¶ 12. Pinkney observed calluses along the lateral aspect of both feet and a dried blood blister on the right foot. *Id*. Callus cushions were applied bilaterally. *Id*. Lattisaw complained of numbness in his feet but declined a prescription for Neurontin. *Id*. He said that he continued to walk in his boots that aggravate his feet. *Id*. Pinkney renewed his prescription for Vitamin A and D ointment. ECF 14-4, 13; ECF 14-5, ¶ 12. There was no indication that the plaintiff was told he would be referred to a foot doctor or sent to a hospital. ECF 14-4, 12-14; ECF 14-5, ¶ 12.

He was seen in the chronic care clinic on July 15, 2015, for left foot numbness and tingling. ECF 16-4, 13. No sores were observed on his feet, and the monofilament bilateral diabetic foot check was within normal limits. *Id*. On August 2, 2015, the plaintiff was seen in the medical unit due to a pepper spray incident but did not otherwise report any medical concerns. *Id*. at 14. On September 3, 2015, during his chronic care visit, he was again educated regarding his diabetes and other medical issues. *Id*. at 15. The plaintiff indicated he understood and had no questions or concerns. *Id*. On September 24, 2015, Lattisaw reported pain in his left foot and numbness. *Id*. at 22. At that time it was noted that he had been noncompliant with his medicine. *Id*. The plaintiff requested "diabetic shoes." *Id*. He was directed to turn in his old sneakers/boots for a new pair, and no orthotic shoe consultation would be approved until it was demonstrated that sneakers worsened the calluses. *Id*. at 23. On October 6, 2015, a non-formulary drug request was filed for corn/callus cushions. *Id*. at 26. Between April and October 2015, the plaintiff refused recommended medical treatment on at least 41 occasions. *Id*. at 39-79.

Lattisaw continues to be seen regularly in the chronic care clinic. ECF 14-5, ¶ 16. He may be seen more immediately, if needed, by use of the prison sick call process. *Id*.

C.   Warden Green's Claims

Warden Kathleen Green, although not named as a defendant, has responded on behalf of defendant ECI. She avers that she does not supervise medical personnel. ECF 16-2, ¶ 4. Within the Maryland Department of Corrections, medical care for inmates is provided by private health care contractors. *Id*. Green avers that it is beyond the scope of her duties to perform any kind of medical treatment or recommend a particular course of treatment. *Id*. Additionally, she states she has no authority to dictate the type of medical treatment an inmate is to receive or to influence the

medical decisions of the health care contractors. *Id.* Green says that she has not been involved in, interfered with, or delayed the provision of medical care to Lattisaw. *Id.* ¶ 5.

## Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526

(internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## Analysis

A.   Respondeat Superior

The law in the Fourth Circuit is well-established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004). Additionally, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Lattisaw's claims against Wexford and Bealer, a supervisor who has no personal

involvement in his treatment, are insufficient. The plaintiff has pointed to no action or inaction on the part of Wexford or Bealer that resulted in a constitutional injury, and accordingly, his claims against Wexford and Bealer will be dismissed.[2]

B.   ECI

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, the plaintiff's complaint against ECI is barred by the Eleventh Amendment.

C.   Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S .294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either

---

[2] If Warden Green had been properly named and served as a defendant, she would likewise be entitled to dismissal as the plaintiff has pointed to no personal involvement on the part of Warden Green in the delivery of his health care.

provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference[.]" *Johnson v. Quinones*, 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (finding that actions inconsistent with doctors' efforts to hide a serious medical condition refute the presence of doctors' subjective knowledge).

In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U. S. at 837. Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Quinones*, 145 F.3d at 168. Mere negligence or malpractice does not rise to a constitutional level. *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986); *see also Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review.").

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). The evidence indicates that during the relevant time, Wexford and its employees considered the plaintiff's requests for medical care, and his needs were addressed. Lattisaw's medical records demonstrate that he was seen regularly by medical personnel, provided medication, and educated regarding his condition. Rather than the defendants being deliberately indifferent to his serious medical needs, it was the plaintiff who was indifferent to his own health, regularly refusing the prescribed course of treatment. Lattisaw's belief that he should have been referred to an outside medical provider regarding his complaint of foot pain is nothing more than a disagreement over the treatment provided. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6

(3rd Cir.1970)).  There are no exceptional circumstances alleged in this case. Therefore, the defendants are entitled to summary judgment.

## Conclusion

For the reasons stated above, the dispositive motions will be granted.

A separate order follows.

<u>July 21, 2016</u>                                              <u>     /S/                   </u>
Date                                                                  Catherine C. Blake
                                                                      United States District Judge